CORNELIUS L. KINGSLAND AND OTHERS, AS EXECUTORS, ETC., OF AMBROSE C. KINGSLAND, DECEASED, AND INDIVIDUALLY, APPELLANTS, v. CLARENCE. TUCKER AND ARTHUR C. TUCKER, AS EXECUTORS, ETC., OF GEORGE W. TUCKER, DECEASED, RESPONDENTS.

*Agreement for the erection of a party-wall — what will be deemed a use of the wall.*

In 1867 one Tucker, the owner of a lot known as No. 12 White street, entered into an agreement with the owners of the adjoining lot, known as No. 14, concerning the erection of a party-wall to be erected by the owners of No. 14, partly on their lot and partly on Tucker's; this agreement provided among other things, that Tucker might use the wall for the support of the beams of his building then standing on his lot, but that whenever he, or his heirs or assigns, should "make use of the same in the erection of any new building to be constructed on lot No. 12 White street," he or they should pay to the owners of the adjoining lot, their heirs or assigns, one equal half of the value thereof at the time of using it. In 1883 an application, made by the executors of Tucker to the bureau of inspection of buildings, for permission to put up a store on the said lot sixty-six feet high, with walls only twelve inches thick, was at first refused, but subsequently granted upon the agreement of the executors "to line" up the party-wall, that is to say, to build the wall of their new building close to the party-wall so as virtually to increase the thickness of the latter.

Upon the trial of this action, brought to compel the defendants, the executors of Tucker, to pay one-half of the value of the party-wall, they denied that they made any use of the party-wall whatsoever, and alleged that they had built an independent wall, without anchoring or tying it to the party-wall, although the permit under which it was built required that it should be, to some extent, dependent upon a pre-existing structure, and practically an addition to it.

*Held*, that it was not necessary, to constitute a "use" of the wall within the meaning of that term as used in the agreement, that the wall of the new building should be tied or anchored to the party-wall, and be lined up to it at all points.

That as the evidence showed that the lateral support which the new wall received from the party-wall, at various points and places where the two structures came into contact, contributed materially to the strength, stability and safety of the wall of the defendants, they did "make use of" it in the erection of their building, within the meaning of that phrase as employed in the agreement, and that the referee erred in holding that they did not.

APPEAL from a judgment in favor of the defendants entered upon the report of a referee.

*Albert Stickney*, for the appellants.

*Sidney S. Harris*, for the respondents.

BARTLETT, J.:

This appeal presents a simple but interesting question. In 1867 George W. Tucker owned the lot known as No. 12 White street, in the city of New York, and Ambrose C. Kingsland, George L. Kingsland and Ambrose C. Kingsland, Jr, owned the adjoining lot known as No. 14. On April 12, 1867, the respective owners entered into an agreement concerning the erection of a party-wall by the Messrs. Kingsland, partly on their lot and partly on Mr. Tucker's. Among other things this contract provided that Mr. Tucker might use the wall for the support of the beams of his building, then standing on his lot, but that whenever he or his heirs or assigns should " make use of the same in the erection of any new building to be constructed on lot No. 12 White street," he or they should pay to the Messrs. Kingsland, their heirs or assigns, one equal half of the value thereof at the time of using it.

The party-wall was built under this agreement. In 1883, the defendants, who are executors under the will of George W. Tucker, erected a new building on the lot No. 12, adjoining the lot of the Messrs. Kingsland, and next to the party-wall, and the question which arises in the present case is whether in so doing they made use of the party-wall within the true meaning and intent of the clause in the contract above quoted. The plaintiffs insist that use was made of the wall by the defendants in the erection of the new building, and bring this suit to recover half the value of the wall as determined by arbitrators. The defendants deny that they made any use of the party-wall whatsoever. The referee before whom the cause was tried found in favor of the defendants, and from the judgment entered on his report the plaintiffs now appeal.

It appears from the evidence in the case that the defendants originally applied to the bureau of inspection of buildings for permission to put up a store sixty-six feet high, with walls only twelve inches thick, and that permission was refused because the proposed wall was too thin. The application was then modified by a proposition in behalf of the defendants to " line up " the party-wall; that is to say, to build the wall of their new building close to the

party-wall, so as virtually to increase the thickness of the latter. This is the interpretation put upon the phrase by the official examiner who inspected the party-wall under the direction of the inspector of buildings in order to ascertain its condition. Upon a favorable report from him the modified application was finally granted, and the defendants, in the language of the learned referee, "were enabled to build a thinner wall by reason of the party-wall being there than the department would otherwise have allowed."

The defendants do not profess to have kept their engagement, express or implied, with the bureau of inspection of buildings, to "line up" the party-wall in building their own. Their position is that it proved impracticable to do this, because the party-wall was out of plumb. They built their own wall, they say, independently without anchoring it or tying it to the party-wall. In other words, according to the case as presented in their behalf, they built an independent wall, thinner than would otherwise have been tolerated, under a permit which authorized only the erection of a wall which should be dependent to some extent upon a pre-existing structure, and practically an addition to it. This is a matter, however, with which they contend the plaintiffs have nothing to do. They deny any liability on their part, unless it is proved that they have made a substantial use of the party-wall in putting up their new building and not merely a constructive use.

Whatever judgment ought to be pronounced upon the action of the defendants, in the domain of ethics, we are disposed to agree with them that the contract contemplates an actual, physical use of the party-wall. If, in order to constitute a substantial use of this nature, it was necessary that the wall of their new building should be tied or anchored to the party-wall, and should "line up" the latter at all points, the referee was clearly right in his conclusion that no use was established by the proof in the case. If less than this would suffice, however, there is given reason to doubt the correctness of the result he reached.

On their direct examinrtion, the witnesses called in behalf of the defendants testified strongly to facts tending to show that the new wall was wholly independent of the party-wall, but this testimony was much weakened by their statements when cross-examined. Thus the contractor for the mason work admitted that the rear of

the new wall touched the party-wall almost all the way up ; while the foreman said the front touched it to the same extent. The latter witness described the party-wall as irregular, overhanging in some places and receding in others. The walls came together at the places where it overhung, and the greatest distance between them at any point where the party wall receded was estimated by this witness at three inches. The testimony of the principal contractor was to the same effect. Moreover it appeared that there were projections of brick work from considerable portions of the surface of the party-wall which had to be cut away to make room for the defendants' wall as it rose, and at these places of course the walls came into contact.

Even if we look only at the evidence in behalf of the defendants, supplemented by the observations of the referee who made a personal inspection of the premises, there is enough in the case to leave no doubt that there are long lines and extensive areas of contact between these walls. Notwithstanding this fact, the referee refused to find that the party-wall afforded any lateral support to the new wall. He appears to have based this refusal upon the ground that even if the defendants did avail themselves of the pre-existing party-wall for purposes of lateral support, to do so would not be to " make use " of the party-wall; for he expressly says in his opinion that such could not have been the intent of the agreement. We are unable to concur in this view. If the defendants had built their new wall of such a thickness that it could safely stand alone, it might well be that the fact that it derived additional strength from the proximity of the party-wall and contact therewith would not establish a substantial use of the latter, since the lateral support in that case would be wholly needless and would add nothing to the value of the new wall. Here, however, it must be presumed that the defendants' wall of less than the thickness prescribed for an independant structure was unsafe unless built in contact with the party-wall. This inference is fully warranted by the action of the bureau of inspection of buildings, and the assent of the defendants to the propriety of the requirement that they should " line up " the party-wall as a condition of making their own wall only twelve inches thick. It is true they failed to comply with this condition, and by omitting to " line up " the party-wall

deprived their own of the full measure of support and strength it would have acquired by contact with the party-wall throughout its whole extent. But because the new wall did not receive all the lateral support designed by the inspector of buildings, it does not follow that it did not receive any. One of the defendants' witnesses did, indeed, swear that if the plaintiff's building, of which the party-wall forms one side, should fall down, it would not hurt the new building of the defendants, but even he does not say that the twelve-inch wall would in that event remain as strong and stable as it is now. We find it impossible to believe that it would. On the contrary, the evidence convinces us that the lateral support which the new wall receives from the party wall, at the various points and places where the two structures come into contact, contributes materially to the strength, stability and safety of the wall of the defendants; and hence that they did "make use" of the party-wall in the erection of their new building, within the meaning of that phrase, as employed in the party-wall agreement.

It follows that the judgment appealed from must be reversed upon the facts and a new trial must be granted, with costs to abide the event.

Brady and Daniels, JJ., concurred.

Judgment reversed, new trial granted, costs to abide event.